UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

GREGORY GAMBEL,

Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

Case No.  22-cv-04647-RMI

**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 23

Plaintiff CG, a minor, has filed suit through his father, Gregory Gambel, against the United States, the Presidio Trust (a federal corporation established under the Presidio Trust Act[1] (hereafter, collectively referred to as the "Federal Defendants"), and Off the Grid Services, LLC (hereafter, "Off the Grid"), a private company incorporated in Delaware. *See* First Amend. Compl. ("FAC") (dkt. 18) at 2. Now pending before the court is the Federal Defendants' motion to dismiss (dkt. 23). Plaintiff has responded (dkt. 26), and the Federal Defendants have replied (dkt. 28). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. For the reasons stated herein, the Federal Defendants' motion is granted.

## **BACKGROUND**

While on holiday in San Francisco in August of 2019, Plaintiff and his family attended a public event on premises owned and operated by Federal Defendants. *See* FAC (dkt. 18) at 4.

---

[1] *See generally* 16 U.S.C. § 460bb – 460bb-5 (establishing the Golden Gate National Recreation Area; defining its composition and boundaries; providing for its acquisition policy and its administration; creating an advisory commission; and, appropriating the funds necessary to carry out the foregoing provisions).

1   Specifically, Plaintiff alleges that Defendant Off The Grid paid Federal Defendants for the purpose

2   of hosting, producing, and/or organizing an event called, "Off the Grid: Presidio Picnic." *Id*. at 5.

3   Plaintiff alleges that Federal Defendants placed and/or furnished a number of "Share Chairs" at the

4   premises of the picnic and invited the public, including children, to use the chairs. *Id*. According

5   to Plaintiff, the website of Defendant Presidio Trust shows that the "Share Chairs"[2] are for use by

6   everyone – even reportedly showing "a person sitting on the back of such chair." *See* FAC (dkt.

7   18) at 5. Plaintiff further alleges that "[n]o warnings were provided[,] including not to play or sit

8   on the back of the Share Chair or that one could be injured by doing so." *Id*. On August 18, 2019,

9   while "utilizing" one of these "Share Chairs," Plaintiff fell and was injured. *Id*. Notably, the FAC

10  does not explain how Plaintiff was "utilizing" the Share Chair when he fell and suffered his elbow

11  injury – instead, the FAC only generally states that the Presidio Trust's website showed someone

12  sitting on the back of a Share Chair and that no warnings had been given to avoid playing or

13  sitting on the backs of these chairs. *See generally id*.

14      Federal Defendants submit that "[d]uring the 2019 time period at issue in this lawsuit, the

15  Presidio Trust had issued a temporary special use permit to Off the Grid Services, LLC for non-

16  exclusive use of certain exterior areas within the Main Post – mostly around the perimeter of the

17  Main Parade ground – for Presidio Picnics, a weekly event that featured local food trucks and

18  vendors." *See* Fed. Defs.' Mot. (23) at 8. As for the "Share Chairs," the Federal Defendants submit

19  that they were introduced to the Presidio's parade grounds in 2016 as part of a decision that "was

20  not mandated by the Presidio Trust's enacting legislation, governing regulations, or land use

21  policies," rather, "the Presidio Trust made the decision based on public feedback and lessons from

22  other parks on how to make the space more welcoming to visitors." *Id*. Further, "[t]he Presidio

23  Trust contracted with Gehl Studios, Inc., a design firm focused on public spaces, to design the

24  chairs and contracted with another company, RMI, to manufacture the chairs." *Id*. Thus, the chairs

25  – being generally available for the public's use at certain times of year – were specifically

26

27  _____

28  [2] A "Share Chair" appears to be large moveable plastic object in the shape of a lawn chair. *See:* https://presidio.gov/explore/attractions/main-parade-lawn

1  designed for the Presidio's Main Parade grounds; and, these chairs "were not removed during

2  Presidio Picnics and remained available on the Main Parade ground for attendees' and [] the

3  public's use." *Id*.

### LEGAL STANDARDS

5  Federal Defendants' dismissal motion argues that the court lacks subject matter jurisdiction

6  over Plaintiff's claims against them for a number of reasons (*i.e.*, dismissal under Fed. R. Civ. P.

7  12(b)(1)), and also that Plaintiff's FAC fails to state a claim upon which relief may be granted

8  (*i.e.*, dismissal under Fed. R. Civ. P. 12(b)(6)).

9  Starting with the jurisdictional arguments, the court will note that federal courts are courts

10  of limited jurisdiction – the general character of which is delineated by Article III, §2, of the

11  Constitution; moreover, "lower federal-court jurisdiction is further limited to those subjects

12  encompassed within a statutory grant of jurisdiction," thus, generally speaking, "the district courts

13  may not exercise jurisdiction absent a statutory basis." *See Home Depot U.S.A., Inc. v. Jackson*,

14  139 S. Ct. 1743, 1746 (2019) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de*

15  *Guinee*, 456 U. S. 694, 701(1982); and, *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U. S.

16  546, 552 (2005)). In light of that, jurisdiction is a fundamental question that must be addressed

17  prior to any consideration of the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523

18  U.S. 83, 93-94 (1998) (universally rejecting the approach taken by numerous lower courts in

19  assuming jurisdiction for the purpose of deciding the merits). For that reason, Rule 12(b)(1)

20  authorizes parties to seek pre-answer dismissal if the court lacks subject matter jurisdiction; and

21  Rule 12(h)(3) requires a court to *sua sponte* dismiss an action if it "determines *at any time* that it

22  lacks subject matter jurisdiction." (emphasis added).

23  A Rule 12(b)(1) jurisdictional attack may be facial or factual: through a facial challenge,

24  the movant contends that the allegations contained in a complaint, on their face, are insufficient to

25  invoke federal jurisdiction; on the other hand, through a factual challenge, the challenger disputes

26  the truth of the allegations that, by themselves, would otherwise trigger federal jurisdiction. *See*

27  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (2004) (citing *White v. Lee*, 227 F.3d 1214,

28  1242 (9th Cir. 2000)). In deciding a factual challenge to jurisdiction, a court may review evidence

United States District Court
Northern District of California

beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242). In the course of that component of the review, courts do not need to presume the truthfulness of the plaintiff's allegations. *White*, 227 F.3d at 1242. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air For Everyone*, 373 F.3d at 1039 (quoting *Savage*, 343 F.3d at 1039, n.2) (internal quotation marks omitted).

It should also be noted that "[i]t is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (internal quotations omitted). Waivers of sovereign immunity must be "unequivocally expressed in the statutory text[,] . . . strictly construed in favor of the United States, and not enlarged beyond what the language of the statute requires." *United States v. Idaho*, 508 U.S. 1, 6-7 (1993) (internal citations and quotations omitted); *see also Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). A suit against a federal agency or officer which seeks relief against the sovereign is, in effect, a suit against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687-88 (1949). For that reason, the principles of sovereign immunity continue to apply whenever a federal agency is sued. *Id.*

Sovereign immunity, therefore, is also jurisdictional bar – that is to say, unless a statutory waiver exists, courts lack jurisdiction to entertain a suit against the United States or its agencies. *Sherwood*, 312 U.S. at 586. Put another way, an assertion of sovereign immunity is essentially a motion to dismiss for lack of subject-matter jurisdiction, to which the same legal standards apply. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("The question whether [of] whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."). Plaintiffs carry the burden to find and

4

1    prove an explicit waiver of sovereign immunity. *Dunn & Black, P.S. v. United States*, 492 F.3d

2    1084, 1088 (9th Cir. 2007); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S.

3    178, 189 (1936) (holding that because the plaintiff sought relief, "it follows that he must carry

4    throughout the litigation the burden of showing that he is properly in court").

5         As to Federal Defendants' arguments pursuant to Rule 12(b)(6), in reviewing the

6    sufficiency of a complaint before the presentation of any evidence either by affidavit or

7    admissions, the court's task is limited – the issue is not whether a plaintiff will ultimately prevail,

8    instead the issue is whether a plaintiff is even entitled to offer evidence to support the claims. *See*

9    *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Gilligan v. Jamco Development Corp.*, 108

10   F.3d 246, 249 (9th Cir. 1997). Dismissal is proper when an operative complaint either fails to

11   advance "a cognizable legal theory," or fails to present "sufficient facts alleged under a cognizable

12   legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also*

13   *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

14        In evaluating such motions, courts must: (1) construe the operative complaint in the light

15   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3)

16   determine whether plaintiff can prove any set of facts to support a claim that would merit relief.

17   *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, courts are not

18   required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact,

19   or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir.

20   2008) (citation omitted). Courts "need not assume the truth of legal conclusions cast in the form of

21   factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir. 1986), and

22   therefore courts must not "assume that the [plaintiff] can prove facts that [he or she] has not

23   alleged or that the defendants have violated . . . laws in ways that have not been alleged." *See*

24   *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459

25   U.S. 519, 526 (1983).

26        To survive dismissal under the standards associated with Rule 12(b)(6), while complaints

27   do not necessarily need to be overflowing with detail, they do need to contain enough relevant

28   factual allegations such as to establish the grounds of a plaintiff's entitlement to relief – and, doing

United States District Court
Northern District of California

so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp*., 550 U.S. at 557). Under these standards, courts follow a "two-prong approach" for addressing a motion to dismiss: (1) first, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements; and, (2) only a complaint that states a *plausible* claim for relief survives a motion to dismiss. Plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense; however, where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint may have alleged, but it has failed to "show," "that the pleader is entitled to relief" as required by Fed. Rule Civ. Proc. 8(a)(2). *See generally Iqbal*, 556 U.S. at 678-79.

In light of these principles, a court considering a Rule 12(b)(6) motion to dismiss can choose to begin by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by well-pleaded factual allegations. *Id*. When a complaint does in fact contain well-pleaded and factual allegations, courts will assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. In short, for a complaint to survive a Rule 12(b)(6) motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

As to the nature of dismissals in general, leave to amend should be granted unless it is clear that amendment would be futile because further amendments cannot remedy the defects in the complaint. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be

1   futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

2                                   **DISCUSSION**

3          "The FTCA [Federal Tort Claims Act] waives the United States' sovereign immunity for

4   claims seeking money damages for injury or loss of property, or personal injury or death caused

5   by the negligent or wrongful act or omission of any employee of the Government while acting

6   within the scope of his office or employment, under circumstances where the United States, if a

7   private person, would be liable to the claimant in accordance with the law of the place where the

8   act or omission occurred." *Nanouk v. United States*, 974 F.3d 941, 944 (9th Cir. 2020) (citing 28

9   U.S.C. § 1346(b)(1) (internal quotation marks omitted)). The FTCA's broad waiver of sovereign

10  immunity is subject to certain exceptions, including the discretionary function exception asserted

11  by Federal Defendants in this case; that exception preserves the United States' immunity from suit

12  as to any claim "based upon the exercise or performance or the failure to exercise or perform a

13  discretionary function or duty on the part of a federal agency or an employee of the Government,

14  whether or not the discretion involved be abused." *Nanouk*, 974 F.3d at 944 (citing 28 U.S.C. §

15  2680(a)). The government bears the burden of establishing that the exception applies. *Nanouk*, 974

16  F.3d at 944 (citing *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015)).

17         Courts employ a two-step inquiry to determine whether the discretionary function

18  exception is applicable. *Nanouk*, 974 F.3d at 944-45. Under the first step, courts inquire into

19  whether the act or omission on which the plaintiff's claim is based was discretionary in nature –

20  essentially, whether it "involve[d] an element of judgment or choice." *Id*. at 945 (quoting

21  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the act did not involve an element of

22  judgment or choice, the analysis ends there and the plaintiff's claim may proceed because, "if the

23  employee's conduct cannot appropriately be the product of judgment or choice, then there is no

24  discretion in the conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S.

25  at 536. If the employee's conduct did involve an element of judgment or choice, the inquiry

26  proceeds to the second step which asks whether the discretionary decision challenged by the

27  plaintiff "is of the kind that the discretionary function exception was designed to shield." *Nanouk*,

28  974 F.3d at 945 (quoting *Berkovitz*, 486 U.S. at 536). The second step must be evaluated with the

United States District Court
Northern District of California

1  understanding that "Congress sought to preclude courts from second guessing discretionary

2  judgments 'grounded in social, economic, and political policy.'" *Nanouk*, 974 F.3d at 945 (quoting

3  *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) Thus, the government would prevail at

4  step two if it can show that the decision challenged by the plaintiff is "susceptible to policy

5  analysis." *Nanouk*, 974 F.3d at 945 (quoting *United States v. Gaubert*, 499 U.S. 315, 325). Here,

6  Federal Defendants argue that the court lacks subject matter jurisdiction over Plaintiff's claim

7  against them because the discretionary function exception applies to preclude Plaintiff's FTCA

8  claim. *See* Fed. Defs.' Mot. (dkt. 23) at 11-16.

9  <u>*Improperly Named Defendants*</u>

10       As a preliminary matter, Federal Defendants argue that the Presidio Trust should

11  independently be dismissed because Plaintiff's FTCA claim may only be brought against the

12  United States. *See id.* at 11. In that Plaintiff has invoked jurisdiction under 28 U.S.C. § 1346(b)

13  (*see* FAC (dkt. 18) at ¶ 1), which provides federal district courts jurisdiction in civil actions on

14  claims against the United States – Federal Defendants contend that "Plaintiff's continued inclusion

15  of the Presidio Trust as a defendant in the FAC ignores the 'well-established' rule 'that the

16  [FTCA] only authorizes lawsuits against the United States.'" Defs.' Mot. (dkt. 18) at 11 (quoting

17  *McAllister v. United States*, No. 11-cv-03858, 2013 WL 2551990, at *2-3, *2 n.1 (N.D. Cal. June

18  10, 2013) (collecting cases and dismissing federal agencies and individual defendants under Rule

19  12(b)(1)). Thus, Federal Defendants contend that the Presidio Trust should thus be dismissed from

20  this case as a threshold matter. *Id.* (citing *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th

21  Cir. 1998) (affirming dismissal of an agency and an individual since "the United States is the only

22  proper party defendant in an FTCA action")).

23       Plaintiff disagrees and suggests that the Presidio Trust has waived sovereign immunity for

24  suits under the FTCA because a portion of its legal claims policy reportedly states that from time

25  to time, it is in the best interest of the Presidio Trust to pursue and settle legal claims brought by,

26  or against, the Trust. *See* Pl.'s Opp. (dkt. 26) at 20. Plaintiff suggests that this statement, in

27  conjunction with the regulatory mechanism set forth at 36 C.F.R. Part 1009 ("Administrative

28  Claims Under the Federal Tort Claims Act"), which sets forth the procedure for filing and the

United States District Court
Northern District of California

8

1   denial or payment of *administrative* claims, constitutes a waiver of sovereign immunity.

2       However, Plaintiff misses the point because, as stated above, "the district courts may not

3   exercise jurisdiction absent a *statutory* basis." *Home Depot*, 139 S. Ct. at 1746 (emphasis added).

4   As to the provisions of Part 1009 of Title 36 of the Code of Federal Regulations, the existence of a

5   regulatory framework for exhausting an administrative remedy cannot be seriously contended to

6   constitute an *ipso facto* waiver of sovereign immunity in FTCA cases when the administrative

7   exhaustion is, itself, a prerequisite to bringing suit under the FTCA. *See McNeil v. United States*,

8   508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they

9   have exhausted their administrative remedies."). More importantly, the legal claims "policy

10  statement" issued by the Presidio Trust's Board, and relied upon by Plaintiff, is neither of the

11  import that Plaintiff asserts (as it pertains to the regulations governing the Presidio Trust's

12  *administrative* consideration of claims) (*see generally* Fed. Defs.' Reply (dkt. 28) at 6), nor is it –

13  as Plaintiff suggests – an indication that "Defendant Presidio Trust has unambiguously waived []

14  sovereign immunity as a federal agency for claims brought under the FTCA (*see* Pl.'s Opp. (dkt.

15  26) at 22). This suggestion misapprehends the concept of sovereign immunity at a fundamental

16  level because individual officers, agencies, and departments of the United States are not even able

17  to waive sovereign immunity, or to withdraw or modify waivers – "just as only Congress can

18  waive an agency's sovereign immunity, so too only Congress can withdraw or modify a waiver of

19  immunity . . . because a waiver of the federal government's sovereign immunity must be

20  unequivocally expressed in *statutory* text and will not be implied [and] [a]n agency cannot waive

21  the federal government's sovereign immunity when Congress hasn't." *See Gonzalez v. Blue Cross

22  Blue Shield Ass'n*, 62 F.4th 891, 899 (5th Cir. 2023) (emphasis in original) (internal quotations

23  and citations omitted); *see also Plaskett v. Wormuth*, 18 F.4th 1072, 1086 (9th Cir. 2021) ("It is

24  well settled that only Congress enjoys the power to waive the United States' sovereign

25  immunity."); *Lynch v. United States*, 292 U.S. 571, 581 (1934) ("Although consent to sue was thus

26  given when the policy issued, Congress retained power to withdraw the consent at any time.");

27  *Becker Steel Co. of Am. v. Cummings*, 296 U.S. 74, 80 (1935) ("Only compelling language in the

28  congressional enactment will be construed as withdrawing or curtailing the privilege of suit

9

1    against the government granted in recognition of an obligation imposed by the Constitution."); *see*

2    *also United States v. Mitchell*, 463 U.S. 206, 215-16 (1983) ("[N]o contracting officer or other

3    official is empowered to consent to suit against the United States. The same is true for claims

4    founded upon executive regulations.").

5           Thus, there is no *statutory* basis under which a plaintiff can venture to name the Presidio

6    Trust as an independent defendant in a FTCA action. Under the FTCA, a claim against the United

7    States is the "exclusive" remedy for plaintiffs seeking to recover damages from the "negligent or

8    wrongful act or omission of any employee of the Government . . . acting within the scope of his

9    office or employment." *See* 28 U.S.C. § 2679(b)(1). It is therefore clear that "the United States is

10   the only proper party defendant in an FTCA action . . ." *See Kennedy*, 145 F.3d at 1078; *F.D.I.C.*

11   *v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) (the FTCA "only allows claims against the United

12   States"); *see also McAllister v. United States*, 2013 U.S. Dist. LEXIS 82067, *4-9 (N.D. Cal. June

13   7, 2013) (collecting cases, finding that the United States is the only proper defendant under the

14   FTCA, and dismissing action against all defendants except the United States). Accordingly, given

15   that Plaintiff's FAC only pleads a single cause of action, under the FTCA, and given that "the

16   United States is the only proper party defendant in an FTCA action," *Kennedy*, 145 F.3d at 1078,

17   the Presidio Trust and all the individual Doe Defendants (to the extent which Plaintiff considers

18   these unidentified individuals to be federal employees, agents, or officers) are **DISMISSED** from

19   this action.

20   *The Discretionary Function Exception*

21          As to the resolution of Plaintiff's FTCA claim against the only remaining Federal

22   Defendant – the United States argues that the claim must be dismissed under the discretionary

23   function exception "because there is no statute, regulation, or rule that requires the government to

24   take specific action with respect to the provision of public seating on the Main Parade ground[,]

25   [a]nd the decision concerning whether and how to provide such seating involves policy

26   considerations that courts lack jurisdiction to review [in this context]." *See* Fed. Defs.' Mot. (dkt.

27   23) at 11. The government therefore contends that "[t]he discretionary function exception to the

28   FTCA provides that the United States may not be held liable for conduct 'based upon the exercise

United States District Court
Northern District of California

United States District Court
Northern District of California

or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused.'" *Id*. at 11-12 (citing 28 U.S.C. 2680(a)). As to the two-prong test set forth above, the government argues that the first prong (*i.e.*, whether the act or omission on which the plaintiff's claim is based was discretionary in nature) "is satisfied when no 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id*. at 12 (quoting *Gaubert*, 499 U.S. at 322). The United States adds that if the policies that inform the conduct at issue allow the exercise of discretion, then the government's alleged acts or failures to act are presumed to be discretionary. *Id*. (citing *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020)). If the first prong is satisfied, it must then be determined whether the challenged judgment (*i.e.*, to provide chairs for public use) is of the kind that the discretionary function exception was designed to shield – that is, whether the nature of the actions taken are susceptible to policy analysis – because the exception is designed to "'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy.'" *Id*. (quoting *Gaubert*, 499 U.S. at 323).

As the government points out, Plaintiff's FAC simply contends that the defendants negligently "owned, operated, entrusted, rented, leased, furnished, supplied, designed, constructed, repaired, modified, serviced, managed, controlled, supervised, maintained, inspected, occupied, used, and/or possessed" the Main Parade ground in the Presidio. *Id*. (citing FAC (dkt. 18) at ¶ 16). Plaintiff's only assertions of any action or omission by the government in the FAC, appear to be: (1) the government's decision to place Share Chairs at the Main Parade ground for public use (*see* FAC (dkt. 18) at ¶ 22); (2) the "configuration" of which chairs Plaintiff claims (in conclusory and oblique fashion) "constitute[] a wide departure from common standards of chair construction" (*see id*. at ¶¶ 26-28); and, (3) the government's failure to warn the public "not to play or sit on the back of the Share Chair or that one could be injured by doing so" (*see id*. ¶ 23). It is therefore contended that "[t]his challenged conduct involves a significant element of judgment or choice that is susceptible to policy analysis, and thus falls within the discretionary function exception." *See* Fed. Defs.' Mot. (dkt. 23) at 13.

1    Plaintiff suggest that the United States is liable under applicable California law –

2    specifically, under "general California tort law," and under California Government Code §§ 815

3    and 846. *See* Pl.'s Opp. (dkt. 26) at 6. Plaintiff also contends that the discretionary function

4    exception to the FTCA's waiver of sovereign immunity does not apply in this case. *See id.* at 14-

5    19. The gist of Plaintiff's argument is that the United States should not "be allowed to

6    *administratively* immunize itself from tort liability under applicable state law as a matter of

7    'policy.'" *Id.* at 15 (citing *Bear Medicine v. United States*, 241 F.3d 1208, 1215 (9th Cir. 2001)).

8    Plaintiff's arguments in this regard seek to use a series of quotes from *Bear Medicine* to gobble-up

9    the entirety of the discretionary function exception to the FTCA's waiver of sovereign immunity.

10   To place *Bear Medicine* into its proper context, a brief summary is necessary. In the course of

11   certain contracted-for logging operations on the Blackfeet Indian Reservation in Montana, a

12   member of the tribe was fatally injured when a tree fell on him; thereafter, his estate filed an

13   action under the FTCA against the United States. *Bear Medicine*, 241 F.3d at 1211. In holding that

14   the discretionary function exception did not apply in that case, the court explained that "the

15   Government has the burden of proving the discretionary function exception applies . . . [t]here

16   must be reasonable support in the record for a court to find, without imposing its own conjecture,

17   that a decision was policy-based or susceptible to policy analysis." *Id.* at 1216. The court in that

18   case found the record to contain contrary indications given the fact that "[t]he BIA was required to

19   ensure that Lone Bear [Logging] complied with the contract provisions, which included OSHA

20   and internal regulations. It was also required to routinely inspect Lone Bear's operations. It is the

21   only organization on the reservation with the appropriate safety expertise and it has virtually

22   complete control of the timbering operations on Indian lands. Its failure to require safety measures

23   or training was not a policy judgment that Congress intended to protect from FTCA liability." *Id.*

24   at 1217. Thus, *Bear Medicine* can be fairly interpreted to stand for the proposition that due to the

25   fact that the government had failed to discharge its own obligations under its logging contract with

26   Lone Bear Logging (to wit – to routinely inspect Lone Bear's operations such as to ensure

27   compliance with OSHA and internal safety regulations), and because owing to that failure, a fatal

28   injury had been sustained, the government's omission "was not a policy judgment that Congress

United States District Court
Northern District of California

12

1    intended to protect from FTCA liability." *Id*. at 1217.

2          Relying on *Bear Medicine*, Plaintiff seeks to establish the broad proposition that "'once the

3    Government has undertaken responsibility for the safety of a project, the execution of that

4    responsibility is not subject to the discretionary function exception.'" *See* Pl.'s Opp. (dkt. 26) at

5    16-17 (quoting *Bear Medicine*, 241 F.3d at 1215). Further, Plaintiff appears to ask the court to

6    assume that anytime the government does anything, it automatically undertakes a responsibility

7    for the safety of all aspects surrounding that undertaking. *See id*. However, Plaintiff overlooks the

8    fact that the government's contracted-for inspection and supervisory obligations under the Lone

9    Bear Logging contract (which it failed to discharge) were the lynchpin of the *Bear Medicine*

10   court's conclusion to the effect that the failure to discharge those contracted-for obligations were

11   not a policy decision, or at least that they were not the type of policy judgment that Congress

12   intended to protect from FTCA liability. The instant case contains none of those elements – there

13   was no contract, and therefore there was no contracted-for obligation to routinely inspect or

14   supervise any aspect of the deployment, or the public's use, of the chairs in question. There was

15   simply a policy decision to provide chairs for the public's use on the Presidio's parade grounds

16   within the Golden Gate National Recreation Area. Accordingly, Plaintiff's reliance on *Bear*

17   *Medicine*, for the purpose of imputing to the government the sorts of duties and obligations the

18   government had undertaken under the Lone Bear Logging contract, is misplaced.

19         It goes without saying that public spaces in general – and national parks and national

20   recreation areas in particular – are not exactly the most sterilized and sheltered of places; indeed,

21   many such places are attended with various conditions and circumstances that can been deemed

22   objectively hazardous and that should be negotiated with care. As an aside, however, the court

23   will, at this point, note Plaintiff's conception of that notion:

24                    By way of example, let's take the Defendant's argument to its logical
                 conclusion using a similar scenario. Imagine the Government decides
25               to implement seating in another part of the Presidio. That decision
                 may arguably be subject to a policy analysis. However, if in the
26               implementation of that decision the Government places the seating on
                 the edge of a cliff in Land's End such that it creates an unreasonable
27               risk of people falling onto the rocks below, that simply cannot be said
                 to be the type of act which Congress intended to shield the
28               Government from liability for under the discretionary use principle.

United States District Court
Northern District of California

> It plainly follows that once the Government makes the decision to provide seating, it then assumes the responsibility for the safe implementation of that decision.
> *See* Pl.'s Opp. (dkt. 26) at 17-18.

A counterpoint to Plaintiff's clifftop example appears in *Valdez v. United States* where, "[o]n July 25, 1991, Felix Valdez plummeted ninety feet down the face of the Ella Falls waterfall in Kings Canyon National Park[,] [and] was rendered a quadriplegic." 56 F.3d 1177, 1178 (9th Cir. 1995). More specifically, while hiking along the Sunset Trail, and upon reaching the summit, Mr. Valzez and his companions attempted to descend down the right side of the falls, he then lost his footing, fell backward into a stream, and tumbled to the base of the falls. *Id.* Following the denial of his administrative claim with the Department of the Interior seeking $60,000,000 in compensatory damages, he filed suit under the FTCA "for the creation of known dangerous conditions by: (1) negligently designing and maintaining a trail in a way that appeared to lead the trail onto the rock bed of the waterfall; (2) having inadequate and/or insufficient warning signs; (3) failing to have guard rails or to otherwise make the area safe; (4) failing to erect barriers to keep people from attempting to cross the stream; and (5) failing to properly warn the public of potential hazards through educational materials, brochures, signs, pamphlets and the like." *Id.*

   In affirming the district court's finding that the discretionary function exception to the FTCA's waiver of sovereign immunity applied to bar Mr. Valdez's lawsuit, the appellate court disagreed with Mr. Valdez's contention that the challenged conduct was not discretionary by holding that the National Park Service's decisions regarding warnings, trail maintenance, and trail closures are clearly policy-based, "requiring them to balance access with safety, and take into account conservation and resources in designing area plans and making individual trail determinations." *Id.* at 1180. The court added that "[b]ecause the [National Park Service] cannot apprise the public of every potential danger posed by every feature of the Park, a degree of judgment is required in order to determine which hazards require an explicit warning and which hazards speak for themselves." *Id.* As to the public policy considerations, the *Valdez* court added that only "'where the challenged governmental activity involves safety considerations *under an established policy*, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees.'" *Id.*

United States District Court
Northern District of California

at 1180 (emphasis added) (quoting *Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir. 1990), quoting *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir. 1987)). As in *Valdez*, "[s]uch is not the case here[,] [because] the challenged conduct clearly implicates a choice between the competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards." *Id*.[3]

In other words, the Presidio's decision to provide Share Chairs for the public's use on its grounds did not involve any contractual duty to routinely inspect, supervise, or oversee the safe use of the Share Chairs (*Bear Medicine*), nor was it attended with any safety considerations under previously established policy (*Summers* and *ARA Leisure Services*[4]) – "[i]nstead, the Presidio

---

[3] *Childers v. United States*, 40 F.3d 973, 973 (9th Cir. 1994) resulted in the same conclusion. *Childers* involved the death of David Childers, age 11, in a winter hiking accident in Yellowstone National Park – an accident which resulted in a lawsuit filed by his mother and father as representatives of his estate. *Id*. After citing testimony and evidence that the National Park Service knew how dangerous the Lower Trail was in winter, the Childers asserted that the failure to warn of known dangers was not a discretionary balancing of public policy concerns. *Id*. at 975. However, the appellate court found that this case was unlike the situations involved in *Summers*, 905 F.2d at 1213-17, *Boyd v. United States ex rel. U.S. Army, Corps of Engineers*, 881 F.2d 895 (10th Cir. 3989), and *Smith v. United States*, 546 F.2d 872, 877 (10th Cir. 1976), "where the courts found no evidence the decisions were based on public policy concerns." *Childers*, 40 F.3d at 973. Instead, the Childers court found the situation to be more analogous to *Kiehn v. United States*, 984 F.2d 1100 (10th Cir. 1993) (holding the Government immune from suit because the decision to post warning signs about the danger of scaling cliffs at Dinosaur National Monument is part of an overall park plan left to the discretion of the National Park Service), and *Johnson v. United States*, 949 F.2d 332 (10th Cir. 1991) (dismissing action for lack of subject matter jurisdiction because the National Park Service's determinations about warning sign placement were discretionary acts). *Childers* explained that in those cases, "the Tenth Circuit found the exception applied because the particular decisions not to post warning signs were part of an overall [National Park Service] plan based on a number of public policy factors." *Childers*, 40 F.3d at 976. Specifically, the *Childers* court found that the decisions made in that case "reflected its determination of how best to manage the park in winter[;] [u]nable to maintain all the trails in the park, cognizant that posting warning signs would inadvertently attract visitors to unmaintained trails, and unable to post signs throughout the park, [the National Park Service] could only decide to close large portions of the park, or to keep the park open, provide visitors with information on the hazards, and take steps to discourage visitors from going to hazardous areas." *Id*. At bottom, the court in *Childers* found that park rangers used their discretion to balance, within the constraints of the resources available to them, a statutory mandate to provide access with the goal of public safety, and that such a decision "was precisely the kind the discretionary function exception was intended to immunize from suit." *Id*.

[4] *See ARA Leisure Services v. United States*, 831 F.2d at 195 (In a case where a tour bus company, that was sued by its passengers when one of its buses went off the road, brought an action against the United States, the court explained that "[w]e do not agree, however, that the failure to maintain Thoroughfare Pass in a safe condition was a decision grounded in social, economic, or political policies . . . there is no clear link between Park Service road policies and the condition of Thoroughfare Pass, which had eroded from an original width of twenty-eight feet to a width of 14.6 feet at the accident site and which had edges so soft as to be dangerous. In fact, there is evidence in the record that Park Service standards explicitly required that park roads conform to the original grades and alignments and that graded roads be firm, and of uniform cross section.") (internal quotation marks and citations omitted).

Trust made the [discretionary] decision based on public feedback and lessons from other parks on how to make the space more welcoming to visitors." *See* Fed. Defs.' Mot. (dkt. 23) at 8 (citing Rayes Decl., Ex. 3, (dkt. 23-4)). Because, "[i]n deciding to add the chairs, the Presidio Trust also had to account for the character and landscape of the Presidio, as well as management of its resources" (*see id.*), the court finds that the Presidio's discretionary decision to provide Share Chairs on its grounds falls well within the parameters described by *Valdez*, and that the discretionary function exception to the FTCA's waiver of sovereign immunity does indeed apply.

*Plaintiff's State Law Arguments*

Plaintiff contends that Federal Defendants are liable under applicable California tort law (general California tort law, California Government Code § 815, and California Civil Code § 846[5]) because 28 U.S.C. § 2674 states that a claim can only be asserted against the United States if, in the same manner and to the same extent, a private individual would be liable under the circumstances. Pl.'s Opp. (dkt. 26) at 6. Plaintiff adds that, pursuant to, 28 U.S.C. 1346(b), liability must be determined in accordance with the law of the place where the act or omission occurred – to wit, California. *Id.* Consequently, Plaintiff delves into the analysis of a number of state court cases focused on chairs, negligence in general, and negligence with respect to chairs in particular. *See id.* at 6-14.

The government responds that "[e]ven if the discretionary function exception did not bar Plaintiff's claim, the Court still lacks subject matter jurisdiction under California's recreational use statute, Cal. Civ. Code § 846(a), as applied here pursuant to the FTCA's private person provision, 28 U.S.C. § 2674." Fed. Defs.' Reply (dkt. 28) at 9. The government notes that it has moved for dismissal, *inter alia*, on immunity grounds, including under Cal Civ. Code § 846(a) (California's recreational use statute), which applies to "[a]n owner of any estate or any other interest in real

---

[5] Initially, it should be noted that Plaintiff repeatedly cites, perhaps mistakenly, to Cal. Gov. Code § 846 (*see* Pl.'s Opp. (dkt. 26) at 2, 5, 6, 8, 20), and Federal Defendants correctly note (Fed. Defs.' Reply (dkt. 28) at 9, n.1) that California Government Code section 846 pertains to "injury caused by the failure to make an arrest or by failure to retain an arrested person in custody" and is inapplicable here. It is likely that in each of those instances, Plaintiff intended to refer, instead, to Cal. Civ. Code § 846 ("Duty of care or warning to persons entering property for recreation; Effect of permission to enter.").

property," as it relates to the FTCA's private person provision. Fed. Defs.' Reply Br. (dkt. 28) at 9 (citing Fed. Defs.' Mot. (dkt. 23) at 16-17. While Plaintiff states that the question of what constitutes "a recreational use" is a fact question that must be determined in light of the totality of the circumstances (*see* Pl.'s Opp. (dkt. 26) at 8), the FAC does allege that Plaintiff and his family were visiting the national park site while on vacation with his family, during which, they attended an event which "provided food, entertainment, music, and seating for the public." *See* FAC (dkt. 18) at ¶¶ 18,19. As the government points out, "[a]t a minimum, this constitutes 'sightseeing' or 'viewing or enjoying historical, archaeological, scenic, natural, or scientific sites,' which are recognized recreational purposes under the statute." Fed. Defs.' Reply Br. (dkt. 28) at 9 (citing Cal. Civ. Code § 846(b)). Thus, contrary to Plaintiff's suggestions (*see* Pl.'s Opp. (dkt. 26) at 8), the court finds that there is no disputed factual issue as to why Plaintiff entered the property of the Presidio – while on vacation with his family (*see* FAC (dkt. 18) at ¶ 19) and staying at the Lodge at the Presidio (*id*. at ¶¶ 19, 20), during the Off the Grid: Presidio Picnic event (*id*. at ¶¶ 17, 18, 21), Plaintiff "utilized" a Share Chair in the national park (*id*. at ¶¶ 25) and was injured. As the government points out (Fed. Defs.' Reply Br. (dkt. 28) at 9), and as it applies to the FTCA's private person provision (*see* 28 U.S.C. § 2674), the pertinent allegations in the FAC are entirely consistent with the activities listed in Cal. Civ. Code § 846(b), which include, "sightseeing," "picnicking," and, "viewing or enjoying historical, archaeological, scenic, natural, or scientific sites." In arguing otherwise, Plaintiff's reliance on *Ornelas v. Randolph*, 4 Cal. 4th 1095, 1102 (1993), is misplaced for the reasons stated by the government (*see* Fed. Defs.' Reply (dkt. 28) at 9-10).

While Plaintiff repeatedly states that the government had actual or constructive knowledge of "the peril posed" by the Share Chairs (*see* Pl.'s Opp (dkt. 26) at 9, 17-18; *see also* FAC (dkt. 18) at ¶¶ 16, 23, 25, 26, 27, 28), these statements are unavailing for a number of reasons. First, Plaintiff's FAC (even after amendment) never managed to describe exactly what Plaintiff was doing on the chair, or how he was doing it, when he was injured. Second, Plaintiff's FAC never described (in light of whatever it was that Plaintiff was doing when he was injured) how the chair was designed or made in a way that posed the much touted "peril." Third, Plaintiff's FAC,

therefore, has also not described how Plaintiff's unspecified manner of "utilizing" the Share Chair, and the unspecified perils associated with the chair's design, would have, or should have, been foreseeable to the government. As such, Plaintiffs statements about "the peril posed" by the Share Chairs, and about the government's supposed knowledge about those perils, are conclusory and argumentative statements, rather than plausible factual allegations. Thus, as to the statutory exception for "[w]illful or malicious" conduct on which Plaintiff relies (under Cal. Civ. Code § 846(d)(1)) (*see* Pl.'s Opp. (dkt. 18) at 9-14), the court agrees with the government in that Plaintiff "cites no factual allegations in the FAC from which the Court may plausibly infer willful or malicious conduct to support such a theory." *See* Fed. Defs.' Reply (dkt. 28) at 10. Nor can the court "plausibly infer actual or constructive knowledge of a peril giving rise to willful misconduct from such an argument." *Id.* at 11. Given the argumentative and conclusory nature of Plaintiff's pleading, it is of no import that the chairs "were brightly colored," or that they were in Plaintiff's opinion, "built from a material that was designed to be attractive to children such as minor Plaintiff," or that in Plaintiff's opinion, "resembled a children's play structure." *See* Pl.'s Opp (dkt. 26) at 18. In sum, the combination of all the statements contained in Plaintiff's FAC (dkt. 18) and those contained in his Response (dkt. 26) to the government's motion to dismiss amount to little more than legal conclusions, threadbare recitals of the elements of a cause of action, conclusory statements, and irrelevant statements. And, the single statement (*see infra* at p. 20) which goes beyond that, still falls short of the plausibility threshold described in *Iqbal*, 556 U.S. at 678-79. The sum of all of these statements still would not permit the court to infer even the mere possibility of misconduct, let alone "show," "that the [Plaintiff] is entitled to relief" as required by Fed. R. Civ. P. 8(a)(2).

*Plaintiff's Vicarious Liability Argument*

Without having pleaded any such claim (*see generally* FAC (dkt. 18)), Plaintiff's Response to the government's motion to dismiss contends that the Federal Defendants are vicariously liable for Gehl Studio's design of the Share Chairs under Cal. Gov. Code § 815.4. *See* Pl.'s Opp. (dkt. 26) at 13-14. Because Plaintiff has failed to plead this theory of liability – raising it for the first

United States District Court
Northern District of California

1    time in a brief in response to a motion to dismiss – the court is not even required to consider it.[6]

2    However, to foreclose the idea that leave to amend could potentially cure this defect, and also

3    because the theory is so patently inapposite, the court will explain its inapplicability.

4         Putting aside the fact that Plaintiff's vicarious liability argument has been waived,

5    Plaintiff's theory relies on Cal. Gov. Code § 815.4 – which provides that a *public entity* is liable

6    for injury proximately caused by a tortious act or omission of an independent contractor of the

7    public entity. Unfortunately for Plaintiff, however, the FTCA's private person provision states that

8    the government's liability under the FTCA is determined "in the same manner and to the same

9    extent *as a private individual* under like circumstances . . ." *See* 28 U.S.C. § 2674 (emphasis

10   added); *see also* 28 U.S.C. § 1346(b)(1) (". . . under circumstances where the United States, *if a

11   private person*, would be liable") (emphasis added); *see e.g., Mace v. United States*, 2015 U.S.

12   Dist. LEXIS 168423, *1-3 (N.D. Cal. Dec. 15, 2015) ("The plaintiff's third claim . . . is for

13   "dangerous condition of public property" under California Government Code § 835 . . . [T]he

14   United States contends that it enjoys sovereign immunity to the § 835 claim. The FTCA, the

15   United States says, waives the federal government's sovereign immunity and thus subjects it to

16   suit in a variety of tort cases — but only "if a private person" could be liable on the given theory.

17   Under § 835, only public entities can be liable. The plaintiff's dangerous-condition claim thus falls

18   outside the immunity waiver of the FTCA and this court has no power to entertain that claim.").

19   Therefore, because Cal Gov. Code § 815.4 only addresses *public entity* liability, it cannot be relied

20   upon under § 2674 and § 1346 to liken the United States to a *private individual*. Accordingly, even

21   if granted leave to amend such as to cure the failure to plead this theory of vicarious liability in the

22   FAC, the claim could still not be saved because of its categorical inapplicability. Thus, for the

23

24   [6] *See e.g, Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 92890, *32 (W.D. Wash. July
16, 2015) ("Finally, the Court addresses Plaintiffs' arguments with respect to vicarious liability under the
25   Lanham Act . . . which have been raised for the first time in response to Defendant's summary judgment
motion. Plaintiffs have never raised these theories of liability in their Complaint, nor have they alleged any
26   facts in their Complaint providing notice to Defendant that they intended to advance such theories.
Accordingly, the Court will not consider Plaintiffs' arguments."); *see also McNeely v. Cty. of Sacramento*,
27   344 Fed. Appx. 317, 319 (9th Cir. 2009) (holding that a section 1983 plaintiff waived his potential municipal
liability claim by raising it for the first time in an opposition to the defendants' motion for summary
28   judgment).

1  reasons stated herein, the United States is **DISMISSED** as a party on sovereign immunity

2  grounds.

3  _Failure to State a Claim_

4         Notwithstanding the foregoing, when stripped of its conclusory and argumentative content,

5  Plaintiff's FAC (even after amendment) fails to state any claim against any party. Initially, the

6  court will note that without the now-dismissed Federal Defendants, there remains a single cause of

7  action (a Federal Tort Claims Act claim) against a non-governmental privately-incorporated

8  company, Off the Grid Services, LLC. As previously mentioned, under the FTCA, the only proper

9  defendant is the United States (_see Lance v. United States_, 70 F.3d 1093, 1095 (9th Cir. 1995)),

10  thus, Plaintiff cannot maintain an FTCA action against Off the Grid; and, given that the FTCA

11  claim was the only claim pleaded, Off the Grid was not a properly named Defendant in this single

12  count FTCA action to begin with. Second, none of the allegations in the FAC impute any

13  wrongful conduct to Off the Grid. _See generally_ FAC (dkt. 18). Third, while the FAC repeatedly

14  makes broad assertions of negligence, it is – even after amendment – still devoid of _factual_

15  allegations that might actually state a negligence claim. As the government points out, in order to

16  state his claim of negligence, Plaintiff must sufficiently plead the elements of the claim, which are

17  duty, a breach of duty, causation, and damages. _See_ Fed. Defs.' Mot. (dkt. 23) at 19 (citing _Conroy_

18  _v. Regents of Univ. of California_, 45 Cal. 4th 1244, 1250 (2009); and, 28 U.S.C. § 1346).

19  Plaintiff's FAC – as stated above, has done little more than string together threadbare recitals of

20  the elements of a negligence claim, stating a number of legal conclusions, rendering a host of

21  conclusory and argumentative statements, and advancing a number of irrelevant statements (_e.g._,

22  the brightness of the color of the chairs, the attractiveness of their material, the newness of their

23  design, and the fact that their design was "modern," and "innovative"). Indeed, as mentioned

24  above, the FAC never describes what exactly Plaintiff was doing on (or with) the Share Chair

25  when he was injured – instead, the FAC only states that Plaintiff "was utilizing" one of the chairs

26  (without elaborating at all as to _how_ he was utilizing it), "when it suddenly and unexpectedly

27  shifted positions, causing Plaintiff to fall and strike the ground, injuring his person." _See_ FAC

28  (dkt. 18) at ¶ 25. This single sentence is the entirety of the FAC's effort to describe _what actually_

United States District Court
Northern District of California

*happened* here. The entirety of the rest of the FAC can be said to be either background information, or threadbare recitals of the elements of a negligence claim, or legal conclusions, or conclusory statements, or irrelevant statements. Even if this case was boiled down to a simple negligence claim with a properly-named defendant, the FAC still cannot be said to have satisfied Rule 8(a)(2)'s basic standard requiring Plaintiff to provide the grounds *showing* his entitlement to relief. Thus, even if the United States were deemed to have not satisfied the discretionary function exception to the FTCA's sovereign immunity waiver, the FAC would still nevertheless have to be dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated herein, the Presidio Trust and the United States are **DISMISSED** from this action on sovereign immunity grounds. What remains is a single FTCA claim and a single party, Off the Grid, LLC, a private company against whom no allegations of wrongdoing have been pleaded, and that cannot be named as a defendant in an FTCA case. Accordingly, Plaintiff's FAC is **DISMISSED with prejudice** because granting leave to amend would be futile.

**IT IS SO ORDERED.**

Dated: February 21, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge

21